# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MARGARET WANDA MCCLOUD ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:08-0010 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

To: The Honorable Thomas A. Wiseman, Jr.

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits (DIB) and Supplementary Security Income (SSI) payments, as provided under Title II and Title XVI of the Social Security Act (Act) as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. (DE 16). For the reasons stated below, the Magistrate Judge recommends that Plaintiff's Motion for Judgment be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for DIB on June 18, 2004, and protectively filed her application for SSI on May 28, 2004, alleging she became disabled and unable to work on April 12, 2004, due to agoraphobia and degenerative bone disorder. (Tr. 62-69). Plaintiff's claim was denied initially and upon reconsideration (Tr. 42, 48, 50). At Plaintiff's request, an administrative

law judge (ALJ) conducted a hearing on April 4, 2007. (Tr. 319). Plaintiff, who was represented by a non-attorney representative, testified. On May 21, 2007, the ALJ issued a denial of benefits. (Tr. 23). The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2005.

2. The claimant has not engaged in substantial gainful activity since April 12, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments; major depressive disorder with agoraphobia; bipolar disorder; panic disorder; generalized anxiety disorder; allergic rhinitis; gastroesophageal reflux disease; osteoarthritis and possible Baker's cyst in the left knee and abuse of alcohol and use of cocaine, both alleged to be in remission and tobacco addiction (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 16.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the exertional demand of medium work and can only climb ladders occasionally. She has the following psychological restrictions at the limited but satisfactory level: the ability to deal with the public, interact with supervisors, maintain concentration, work within a regular schedule, complete a normal work week; respond appropriately to changes in the work setting and set realistic goals.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 28, 1955 and was 49 years and seven months old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job

skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 40.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act from April 12, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-23).

Plaintiff sought review from the Appeals Council and on November 27, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby rendering that decision the final decision of the Commissioner. (Tr. 5). This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

Plaintiff does not allege error in the ALJ's findings on Plaintiff's physical impairments. (DE 17, p. 2). Consequently, it is only necessary to review the record related to the Plaintiff's mental impairments.

A. <u>Background</u>

At the time of the hearing, Plaintiff was 51 years old. (Tr. 322). Plaintiff has a high school education and attended training as an aircraft mechanic. (Tr. 75, 323). Plaintiff previously worked as an aircraft structural assembler, data entry clerk, recycling cardboard assembler, general assembler, payroll clerk, general laborer, and as a petting zoo cashier. (Tr. 334-35).

B. <u>Medical Assessments</u>

On November 24, 2003, Dr. Agbenohevi diagnosed the Plaintiff with depression and

noted that she appeared anxious. (Tr. 189-192).

On October 22, 2004, when Plaintiff was seeking treatment at the Plateau Mental Health Center (PMHC), Dulcie Garrett, medical assistant, diagnosed Plaintiff with major depressive disorder and agoraphobia.(Tr. 197). Ms. Garrett found Plaintiff to have a Global Assessment of Functioning (GAF) of 50. *Id.*

On November 23, 2004, Linda Blazina, Ph. D. saw the Plaintiff for a consultative examination. (Tr. 209). Dr. Blazina found that Plaintiff had major depressive disorder, anxiety disorder, agoraphobia, and a current GAF of 55 to 60. (Tr. 213). Dr. Blazina noted that Plaintiff's ability to do work related activities was only moderately limited due to depression, anxiety, and agoraphobia. (Tr. 214.)

On December 8, 2004, a non examining state agency physician, Dr. Kirk completed a mental residual functional capacity assessment and found that the Plaintiff had moderate limitations in maintaining concentration, persistence or pace and in maintaining social functioning. (Tr. 229). Dr. Kirk found mild limitation in activities of daily living. *Id.* Dr. Kirk found no limitation regarding episodes of decompensation of extended duration. *Id.*

During April 2005, Jennifer Kelly, a licensed clinical social worker (LCSW), began treating Plaintiff at Agape-faith based counseling. On April 27, 2005, Ms. Kelly reported that Plaintiff had a GAF of 35 and then on May 13, 2005, Ms. Kelly reported that Plaintiff had a GAF of 50. (Tr. 244, 246). On June 8, 2005 Ms. Kelly reported that Plaintiff had a GAF of 35. (Tr. 265). In September 2005, Ms. Kelly filled out a form stating that Plaintiff has extreme limitations in every category of mental ability and aptitude needed to do unskilled work. (Tr. 268-271).

On May 2, 2006 at PMHC, Barbara Carr, a certified master social worker, found that

Plaintiff had major depressive disorder, generalized anxiety disorder, panic disorder with agoraphobia, and a GAF of 45. (Tr. 305).

On May 25, June 30, September 18, and October 16 of 2006, at PMHC, Plaintiff was seen by Holly Robertson, an advanced practice registered nurse, who reported the Plaintiff had bipolar 1 disorder, moderate panic disorder with agoraphobia, generalized anxiety disorder, and a GAF of 45. (Tr. 284, 289, 295, 298).

### C. Plaintiff's Activities of Daily Living and Hearing Testimony

Plaintiff says that she does housework for a friend in exchange for her room and board. (Tr. 115). She states that she cooks 2 meals a day, walks the dogs, mows the yard ( in intervals), dusts, vacuums, and cleans dishes and laundry. (Tr. 115, 121). She further states that she is afraid to go far from the home and that she goes outside the home 3-4 times a week to get groceries or visit her mother or grandchildren. (Tr. 117, 120). She says that she won't drive to a doctors appointment in another town because she is afraid that she will panic and that she has missed therapy appointments because of her panic attacks. (Tr. 120, 328). She also says that she cries a lot, is depressed, can not focus, and that she can not remember movies or books even if she has seen the movie repeatedly. (Tr. 118-19, 331). She states that she usually has to lie down every day because she gets tired, and that she wakes up every couple of hours when she sleeps. (Tr. 124). She says that she previously used cocaine and alcohol but is now sober. (Tr. 119-20).

### D. Vocational Expert Testimony

At the hearing on April 4, 2007, a vocational expert (VE), Edward Smith, testified. (Tr. 333-41). The ALJ posed the following hypothetical. Considering Plaintiff's background, would Plaintiff be able to return to her previous work at a medium exertional level having the following psychological restrictions at the limited but satisfactory level: the ability to deal with public,

interact with supervisors, maintain attention and concentration, work within a regular schedule, complete a normal work week, respond appropriately to changes in the work setting and set realistic goals. (Tr. 336). The VE responded that the Plaintiff would be able to return to her previous work. *Id.* The ALJ then asked if there are other jobs the Plaintiff could perform with those restrictions. (Tr. 336-37). The VE stated the following positions were available: packager with 3,300 positions in TN and 127,000 nationally, machine cleaner with 3,400 positions in TN, and 151,000 nationally, linen room attendant with 1,300 jobs in TN and 60,000 nationally. *Id.*

The ALJ then changed the hypothetical keeping the restrictions the same but changing it to be a light rather than medium exertional level. (Tr. 337). The VE responded that the following positions were available: photocopy machine operator with 800 positions in TN and 20,000 of them nationally, a sorter with 1,500 positions in TN and 86,000 positions nationally, a mail clerk with 1,500 positions in TN and 51,000 positions nationally. (Tr. 337-38).

The ALJ then asked how it would affect the Plaintiff's ability to work if the Plaintiff were to miss work a week or more a month from mental problems. (Tr. 338). The VE responded that would render a worker unemployable. (Tr. 338). The Plaintiff's representative then asked the VE how it would affect someone's ability to work if they had the major limitations found by Ms. Kelly. (Tr. 340-41). The VE responded it would render them unemployable. (Tr. 341).

### III. CONCLUSIONS OF LAW

A. <u>Standard of Review</u>

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986). The purpose of the review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the

process of reaching the decision. *Id.*

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389-90. However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B. <u>Proceedings at the Administrative Level</u>

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period for not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1) If the claimant is working and the work constitutes substantial gain activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent;

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

if a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990) (citing 20 C.F.R. §§ 404.1520, 416.920).

The Commissioner's burden at the fifth step of the valuation process can be carried by relying on the medical vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a non exertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Id.* Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where grids do not direct a conclusion as the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and non-exertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

C. Plaintiff's Statement of Errors

Plaintiff alleges three errors in the ALJ's decision: (1) that the ALJ erred in finding Ms. McCloud did not meet a listed impairment; (2) that the ALJ failed to give proper consideration and weight to the evidence from Ms. McCloud's treating mental health care providers; and (3) that the ALJ erred in dismissing the credibility of Ms. McCloud's subjective complaints. (DE 17, p. 7-9)

1. The ALJ did not error in finding Plaintiff did not meet a listed impairment.
Under listing 12.04, the level of severity for an affective disorder "is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R., Pt. 404, Subpt P, Appendix 1. Part B states a condition in A must result in at least two of the following:

1. Marked restriction of activities of daily living: or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

*Id.* The ALJ found that Plaintiff did not meet the criteria under B or C. (Tr. 15). More specifically, the ALJ found that she does not meet the B criteria because she has only a mild restriction of activities of daily living, a moderate restriction in maintaining social functioning, a moderate limitation in maintaining concentration, persistence and pace, and no episodes of

decompensation of extended duration. (Tr. 15). Plaintiff argues that she has marked limitations required under Part B. (DE 17, p.7). However, there is substantial evidence in the record to support the ALJ's finding that the claimant does not have marked limitations. Dr. Blazina's and Dr. Kirk's opinions support the ALJ's finding that the Plaintiff has no marked limitations. Ms. Kelly found that the Plaintiff had extreme limitations but, as stated below, the ALJ did not error by not giving Ms. Kelly's opinion controlling weight.

2. The ALJ gave proper consideration and weight to the evidence from Plaintiff's treating mental health care providers.

The Plaintiff argues that the ALJ did not correctly consider the GAF scores given by Plaintiff's psychological providers. (DE 17, p. 9) Many of the providers gave the Plaintiff a GAF of 50 or below, which the ALJ acknowledged would indicate serious impairments. (Tr. 18-20). However, Dr. Blazina gave the Plaintiff a GAF of 55-60, which the ALJ noted indicated moderate impairments. (Tr. 20). Also, as the Defendant pointed out, the ALJ is not required to give particular weight to GAF scores. *See Kornecky v. Comissioner,* 167 Fed. Appx. 496, 511 (6th Cir. 2006). Thus, the ALJ gave proper consideration to the GAF scores.

The Plaintiff also argues that more weight should have been given to Ms. Kelly who found marked limitations in every category. (DE 17, p. 9). An ALJ should give enhanced weight to the findings and opinions of treating sources since these sources are the most able to provide a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). A treating source is to be a physician, psychologist or other acceptable medical source. 20 C.F.R. § 404.1502. However, a licensed clinical social worker is not listed as an accepted medical source to determine impairment, but rather is an "other source." 20 C.F.R. §§ 404.1513(a), 404.1513(d); SSR07-03p, 2006 SSR LEXIS 5, *4. Thus, Ms. Kelly, a licensed clinical social worker, is not a

treating source entitled to controlling weight.

Furthermore, even if Ms. Kelly was a treating source, a treating source's opinion gets controlling weight when it "is not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(d)(2). Opinions inconsistent with the rest of the record should be given less weight. *See* 20 C.F.R. § 404.1527(d)(4). The ALJ stated that Ms. Kelly's opinion would not be given controlling weight because of inconsistencies (Tr. 21), and there are multiple inconsistencies in the record to support this conclusion.

First, as the ALJ points out, Ms. Kelly's opinion that Plaintiff has extreme limitations in every category of mental ability and aptitude needed to do unskilled work (Tr. 268-271) is inconsistent with the Plaintiffs statements. (Tr. 21). Plaintiff states that she calls family and friends and visits her mother and grandchildren, (Tr. 124, 20) but Ms. Kelly stated that Plaintiff's "social and relationship skills are virtually non existent"(Tr. 270). Ms. Kelly reported that Plaintiff has extreme limitations in adhering to basic standards of neatness and cleanliness. (Tr. 270). However, Plaintiff states that she cleans on a regular basis (Tr. 124), and others in the record have stated Plaintiff is "clean and well groomed" and that her appearance is appropriate (Tr. 298, 304).

Also, Ms. Kelly's report is inconsistent with Ms. Kelly's own findings. Ms. Kelly repeatedly noted Plaintiff to have normal concentration and intact memory (Tr. 244-46, 265), yet she assessed Plaintiff as having extreme limitations in remembering work like procedures or in maintaining attention for a two hour segment. (Tr. 268).

Additionally, Ms. Kelly's opinion is contradicted by Dr. Blazina's and Dr. Kirk's evaluations, which found only moderate limitations. Thus, there is substantial evidence to

support the ALJ's finding that Ms. Kelly's report is inconsistent and should not be given controlling weight.

> 3. The ALJ did not err in dismissing the credibility of Plaintiff's subjective complaints.

The ALJ stated that, because of inconsistencies, the Plaintiff's testimony regarding her symptoms and limitations is not supported by the record and is not fully credible. (Tr. 21). "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing the witness's demeanor and credibility." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). Furthermore, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's other testimony, and other evidence." *Id.*

The Plaintiff's statements were inconsistent many times. Plaintiff states that she is afraid to go far from the home (Tr. 117), yet she walks the dogs, takes the dogs on rides, and leaves the home three to four times a week to shop for groceries or to visit her mother and grandchildren. (Tr. 115, 120, 124) On multiple occasions, Plaintiff stated that she has not been able to work since 1996 (Tr. 69, 302), but she worked as late as April, 2004. (Tr. 103). Her employer from that time reported positively for almost all of Plaintiff's work abilities. (Tr. 103-05). Thus, the ALJ did not err in dismissing the credibility of Plaintiff's subjective complaints.

## IV. RECOMMENDATION

For the reasons stated above, the Magistrate Judge recommends that the Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party will have ten(10) days from receipt of any objections filed regarding this report to file a response to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, reh'g denied, 474 U.S. 1111 (1986).

ENTERED this 10th day of July, 2009

Joe B. Brown
United States Magistrate Judge